PER CURIAM

*1146 TEXTO COMPLETO DE LA SENTENCIA
El peticionario, Silverio Pérez Figueroa, nos solicita que revoquemos una orden emitida el 17 de septiembre de 2003 • — durante una reunión en el despacho del Juez— por el Tribunal de Primera Instancia, Sala Superior de Bayamón. Mediante dicha orden, entre otras cosas, el foro a quo dejó sin efecto los señalamientos pautados en el caso de epígrafe para los días 17 y 29 de septiembre de 2003.
Aunque el peticionario se refiere —en la parte introductoria de su escrito— a la orden del 17 de septiembre de 2003, lo cierto es que en los errores invocados, el recurrido hace referencia tanto a la transferencia de la vista del divorcio (que estaba pautada para el 29 de septiembre de 2003), como a ciertas órdenes emitidas anteriormente, relacionadas con la toma de deposiciones a las Sras. Luzie Muñiz y Jessica Delgado Mora.
Inconforme con lo actuado por el tribunal a quo, el peticionario nos solicita que revoquemos lo dispuesto por el referido foro, alegando que incidió al dejar sin efecto el señalamiento de la vista de divorcio y al emitir órdenes para la toma de deposiciones a las señoras Luzie Muñiz y Jessica Delgado.
Conjuntamente con el recurso de certiorari, el Sr. Pérez Figueroa, presentó —el 26 de septiembre de 2003 — , una solicitud en auxilio de nuestra jurisdicción. Esta última fue atendida, ese mismo día, por un panel de jueces sustituto de este Tribunal. Estos ordenaron la paralización de los procedimientos ante el foro recurrido. Posteriormente, el expediente de este caso fue referido al panel regular de jueces que atiende esta Región y, en vista de la orden de paralización, así como en atención a los planteamientos del peticionario, le concedimos un término de diez días a la Sra. Laura Homar Damm para expresar su posición en el asunto ante este Tribunal.
Hemos considerado necesario hacer un breve recuento del trámite del caso en este foro, ante las reiteradas manifestaciones y veladas imputaciones de la abogada de la demandante-recurrida, Leda. Heileene Colberg Birriel, las cuales bordean los cánones de ética de la abogacía. Este asunto lo atenderemos más adelante y será objeto de nuestro análisis del caso.
Por los fundamentos que expresamos a continuación, se expide el auto de certiorari y modificamos lo dispuesto por el Tribunal de Primera Instancia. En vista de que lo aducido en el primer error invocado fue atendido en nuestra resolución de 18 de diciembre de 2003, es innecesario entrar en su consideración. Por consiguiente, hacemos formar parte de esta sentencia todo cuanto expusimos en dicha resolución.
Así las cosas, en atención al segundo señalamiento de error, se modifican las órdenes emitidas por el tribunal recurrido, relativas al descubrimiento de prueba.
I
En términos generales, el expediente del caso nos refiere los siguientes hechos. El 18 de octubre de 2002, la Sra. Laura Homar Damm presentó una demanda de divorcio contra el Sr. Silverio Pérez Figueroa por las causales de adulterio y trato cruel. Solicitó, además, la coadministración de la sociedad de bienes gananciales. A la par *1147 solicitó ciertos remedios provisionales, tales como hogar seguro (para ella y su hija) y pensión alimentaria pendente lite.
El Sr. Pérez Figueroa contestó la demanda antes mencionada y se opuso a la solicitud de la Sra. Homar Damm en lo referente a la coadministración de los bienes de la sociedad de bienes gananciales. Este solicitó, además, que los asuntos del litigio fueran celebrados en privado, debido a que es una figura conocida de la televisión y argumentó que algunos documentos de este caso ya habían circulado en programas televisivos.
Así las cosas, luego de varios trámites procesales, las partes lograron estipular una pensión alimentaria de $8,400 mensuales para beneficio de una hija menor de nombre Cecilia Pérez Homar. El 18 de noviembre de 2003, el Tribunal de Primera Instancia le impartió su aprobación a dicha estipulación. Igualmente, en fecha posterior, las partes estipularon la coadministración de la sociedad de bienes gananciales mediante un acuerdo suscrito por éstos, el cual también fue aprobado por el foro a quo el 21 de enero de 2003. Como parte de esta estipulación, se le garantizó a la demandante, recurrida una cantidad mínima de $2,400 mensuales, luego del pago de las deudas gananciales y el pago de los gastos de cada uno. Con esta estipulación, las partes suscribieron un acuerdo privado sobre estipulación de coadministración.
Durante el proceso antes relacionado, la Sra. Homar Damm tuvo la oportunidad de llevar a cabo el descubrimiento de prueba que consideró necesario, entre los que se encuentran la toma de deposiciones al manejador del demandado, Sr. Rafael Muñiz, y a la asistente del demandado, Sra. Luzie Muñiz. También le envió sendos pliegos de interrogatorios, producción de documentos y requerimiento de admisiones al peticionario, Sr. Pérez Figueroa.
En el transcurso del caso y en virtud de que las partes habían logrado mejorar su comunicación —la que hizo posible las estipulaciones antes mencionadas — , la Sra. Homar Damm consideró innecesario la celebración de una vista contenciosa de divorcio y, de hecho, mediante moción presentada ante el tribunal a quo —el 11 de febrero de 2003 — , manifestó su disponibilidad para llegar a un acuerdo de divorcio por consentimiento mutuo. 
Mientras tanto, según surge del expediente, la vista para dilucidar el divorcio fue pautada en múltiples ocasiones, mas, sin embargo, reiteradamente se dejó sin efecto por circunstancias que las partes se atribuyen entre sí el uno al otro. Por ello, el Sr. Pérez Figueroa en su recurso manifiesta que teme que la vista del divorcio continúe posponiéndose ante la intención de la Sra. Homar Damm de continuar realizando descubrimiento de prueba, lo cual ocasionaría la dilación innecesaria de este asunto. El Sr. Pérez Figueroa adujo sentirse hostigado ante la magnitud del descubrimiento de prueba llevado a cabo por la Sra. Homar Damm.
Visto lo anterior, a pesar de que el peticionario había presentado una reconvención por la causal de separación, ante las múltiples peticiones de descubrimiento de prueba que ocasionaron las continuas suspensiones de la vista del divorcio, éste alega que optó por aceptar la causal de divorcio por trato cruel invocada por la Sra. Homar Damm. Además, mediante una moción presentada el 29 de agosto de 2003, aceptó su capacidad económica para proveer la pensión alimentaria, lo cual hacía innecesario continuar con el descubrimiento de prueba, según lo resuelto en Chévere v. Levis, 150 D.P.R. _ (2000), 2000 J.T.S. 56. Siendo así, y ante la ausencia de controversia en lo relativo a la custodia, patria potestad y relaciones paterno-filiales, solicitó que se celebrara la vista del divorcio sin mayor dilación. No empece a la posición asumida por éste, la recurrida solicitó diversas órdenes al tribunal a quo para continuar con el descubrimiento de prueba y, como parte de éste, anunció la toma de deposición al Sr. Pérez Figueroa, a la Sra. Jessica Delgado y, por segunda ocasión, a la Sra. Luzie Muñiz. Además, requirió que el Sr. Rafael Muñiz le produjera ciertos documentos. Aún más, solicitó la comparecencia de todas las personas antes mencionadas, así como también la del Sr. Luis Roldán, Gerente de Telemundo, a la vista pautada para el 17 de septiembre de 2003.
Ante ese dramático cuadro procesal, en la vista pautada para el 17 de septiembre de 2003, se produjo una *1148 reunión en cámara. Ese día había sido pautado para atender las diversas solicitudes de las partes ante el foro a quo. No obstante, según la resolución emitida por el Tribunal de Primera Instancia sobre los incidentes de ese día, la reunión en cámara con el juez obedeció a que el caso fue reasignado a otro juez que no conocía sus interioridades y optó por escuchar a las partes en su despacho e informarse sobre los asuntos pendientes. En esa ocasión, el juez determinó dejar sin efecto no sólo la vista pautada para ese día, sino también la del divorcio que estaba señalada para el 29 de septiembre de 2003. Ante planteamientos tan neurálgicos, el foro recurrido, en lugar de acometer con prontitud la dilucidación de éstos, ni siquiera pautó una vista para atenderlos y dejó el caso sin señalamiento. Aun así, el peticionario Pérez Figueroa presentó varias mociones con distintas solicitudes, las cuales, al momento de presentarse el recurso de certiorari que nos ocupa, no habían sido atendidas por el tribunal recurrido.
Por su parte, la Sra. Homar Damm ha presentado sendos escritos ante nos en los cuales insiste en que carecemos de jurisdicción para atender este caso por no haberse acompañado con el apéndice del recurso la resolución recurrida —porque no la hay, ya que ese día no se celebró ninguna vista' — . Además, cuestiona la atención brindada por este Tribunal a este asunto, en abierta implicación de que en el caso que nos ocupa no se ha seguido el curso regular que se le ha dado a otros casos. Específicamente, en la primera página del escrito presentado el 9 de octubre de 2003 por la Sra. Homar Damm, se expresa así: “. . . la norma no rutinaria para otros casos, pero sí para este [sic] y fuera de horas laborables para este Honorable Tribunal, ...” Esto es una abierta alusión y cuestionamiento de la forma en que este Tribunal atiende los asuntos ante nos. Tales manifestaciones no pueden ser obviadas.
Aunque nuestra norma habitual es pasar por alto las discrepancias o quejas que puedan manifestar las partes con la forma en que disponemos de los asuntos ante nuestra consideración, la gravedad de las imputaciones de la Leda. Heileene Colberg Birriel, requiere que nos apartemos de dicha norma. Con el único propósito de clarificar el récord y, de paso, despejar sus dudas, le informamos a la Leda. Colberg Birriel que la atención y trámite dado a este asunto es la habitual y rutinaria con la que este panel despacha todos los asuntos ante su consideración, máxime cuando son casos de familia. Más aún, cuando media una solicitud en auxilio de nuestra jurisdicción. Nada de extraño ni particular tiene darle curso a un caso para que la parte recurrida se exprese y nos ponga en posición de atender los méritos del asunto planteado. ¿Acaso la Leda. Colberg Birriel esperaba que, luego de expedida la orden de paralización, dejáramos este asunto sin atender con prontitud lo que sin duda continuaría dilatando los procedimientos en este caso y, por consiguiente, ocasionar que la pobre comunicación y animosidad entre las partes continuara in crescendo? Es lamentable la percepción manifiesta de la abogada sobre la diligencia de este foro para acometer debidamente sus responsabilidades. Sepa que este panel de jueces ejerce sus funciones conforme a lo estatuido en las leyes, reglamentos y nuestro mejor criterio de la evaluación de los hechos traídos ante nos. Le recordamos a la distinguida letrada que el Canon 9 de Etica Profesional, en su parte pertinente, dispone:
“El abogado debe observar para con los tribunales una conducta que se caracterice por el mayor respeto. Ello incluye la obligación de desalentar y evitar ataques injustificados o atentados ilícitos contra los jueces o contra el buen orden en la administración de la justicia en los tribunales. En casos donde ocurrieren tales ataques o atentados, el abogado debe intervenir para tratar de restablecer el orden y la buena marcha de los procedimientos judiciales...”. (Enfasis suplido).
4 L.P.R.A. Ap. IX, C. 9.
Aclarado lo anterior, procedemos a atender el planteamiento jurisdiccional. Si bien es cierto que los recursos ante este Tribunal deben estar acompañados por la resolución cuya revisión se solicita, no es menos cierto que, en ciertas circunstancias, tenemos discreción para dispensar dicho cumplimiento. Nos explicamos.
El Reglamento Transitorio del Tribunal de Apelaciones —en lo relativo a los recursos de certiorari— *1149 dispone que este foro podrá permitir a la parte peticionaria la presentación de los documentos del apéndice a que se refiere la Regla 34(E)(4) con posterioridad a la fecha de la presentación del escrito de certiorari. Con ello, se despeja cualquier duda del porqué se ordenó la paralización del caso ante el Tribunal de Primera Instancia sin contar con copia de la resolución o minuta donde constara la orden apelada. Siendo así, ante la contención del peticionario en el sentido de que la misma no había sido reducida a escrito, este Tribunal, conforme a nuestras facultades discrecionales, le ordenamos al foro recurrido que emitiera una minuta donde se recogieran los incidentes del señalamiento del 17 de septiembre de 2003.
En el ínterin, y previo a recibir la resolución emitida por el Tribunal de Primera Instancia, la recurrida presentó un escrito ante nos en el cual confirmó lo alegado por el peticionario —específicamente que la vista del divorcio había sido suspendida y que no se había pautado fecha para la misma.— Por ello, aunque no contáramos con la resolución que recogiera lo realmente acontecido el 17 de septiembre de 2003 en el Tribunal de Primera Instancia, lo cierto es que la referida orden, para empezar, no está en controversia (en cuanto a que se dejó sin efecto la vista de divorcio para el 29 de septiembre de 2003) y, lo que es peor, se dejó el caso sin señalamiento. La recurrida aduce, además, que el caso todavía no está listo para que se pueda celebrar la vista del divorcio. Sin embargo, es de notar que luego del tortuoso litigio que se ha prolongado por más de un año, el Juez que atendía este asunto ante el Tribunal de Primera Instancia le solicitó a las partes que sugirieran fechas para la vista del divorcio. Ello es demostrativo de que el caso —en cuanto al divorcio se refiere — , estaba perfeccionado. De hecho, la vista del divorcio se pautó para el 24 de julio de 2003, y se reseñaló para el 29 de septiembre de 2003 ante diversas peticiones de la Sra. Homar Damrn. 
Por otro lado, en atención a lo dispuesto en la resolución emitida por este Tribunal el 3 de octubre de 2003, el Juez del foro a quo, Hon. Carlos de Jesús Rivera Marrero, emitió una resolución en la que certificó que el 17 de septiembre de 2003 no se celebró vista alguna en este caso, por lo cual no existe minuta. Sin embargo, de esa misma resolución se desprende que, cuanto menos, ordenó dejar sin efecto los señalamientos no sólo del día 17 de septiembre si que también el del 29 de septiembre de 2003 —en este último se atendería el divorcio— que es, precisamente, uno de los errores que señaló el peticionario. Por ende, dicho documento —la resolución aludida — , es suficiente para atender el primer error apuntado sobre la posposición indefinida de la vista del divorcio. Como ya dijimos, este asunto fue atendido en nuestra resolución del 18 de diciembre de 2003.
Expresado lo anterior, denegamos la solicitud de la parte demandante-recurrida a los fines de que desestimemos el recurso porque el apéndice está incompleto. Román et als. v. Román et als., 158 D.P.R. _ (2002), 2002 J.T.S. 132.
Previo a entrar en la consideración del segundo error, es menester que nos pronunciemos sobre el procedimiento que se llevó a cabo en el tribunal a quo el 17 de septiembre de 2003. Esto, ante la divergencia de criterios sobre lo realmente acontecido en la reunión en cámara. Ello pone de manifiesto la deseabilidad e importancia de que los jueces, luego de este tipo de reuniones (las que reconocemos constituyen un mecanismo útil, principalmente cuando, como en este caso, luego de estar siendo atendido por un juez, se le asigna a otro juez), viertan para récord lo acontecido en cámara, recogiendo los acuerdos, las órdenes, y pautando los procedimientos posteriores, de forma que levanten récord sobre el particular, lo cual debe hacerse en presencia de ambas partes y así despejar dudas o mal entendidos como se desprende y ocurre en este caso. La discrepancia llega a tal extremo que el peticionario presentó ante nos un escrito juramentado el 30 de octubre de 2003 en el cual da fe de ciertas incidencias que no se recogen en la resolución en cuestión. Figueroa v. E.L.A., 113 D.P.R. 327, 328, n. 2 (1982). 
De otra parte, en cuanto al segundo error apuntado —relativo al descubrimiento de prueba que todavía interesa hacer la recurrida — , no existe impedimento para que podamos atenderlo porque en el apéndice del recurso se incluyó copia de dichas órdenes. Por consiguiente, pasamos a evaluar lo relativo al descubrimiento de prueba que luego de las estipulaciones de las partes la recurrida aún interesa realizar, y su procedencia.
*1150 El Sr. Pérez Figueroa aduce que se opuso al nuevo descubrimiento de prueba anunciado por la Sra. Homar Damm por considerarlo opresivo e innecesario ante su aceptación de capacidad económica. Sostiene que a pesar de esto, el tribunal a quo accedió a la petición de la demandante para continuar con el descubrimiento de prueba y emitió las órdenes peticionadas por ésta. Siendo así, el 2 de septiembre de 2003, la demandante le anunció al Sr. Pérez Figueroa que se proponía deponerlo los días 5 y 15 de septiembre de 2003, así como a la Sra. Jessica Delgado Mora el 12 de septiembre de 2003.
El demandado-peticionario reiteró su oposición a las solicitudes de la demandante-recurrida, mediante escrito presentado el 24 de septiembre de 2003, las cuales, al momento de recurrirse ante este Tribunal, no habían sido atendidas.
Como se sabe, la Regla 23.1 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 23.1, concede a las partes, en términos generales, la oportunidad de hacer un amplio descubrimiento de prueba a los fines de obtener información necesaria para ser utilizada en el juicio y descubrir la verdad. Rivera y Otros v. Bco. Popular, 152 D.P.R. _ (2000), 2000 J.T.S. 156. Sin embargo, tal facultad no es ilimitada. General Electric v. Concessionaires, Inc., 118 D.P.R. 32 (1986). Por otra parte, la Regla 23.2 de Procedimiento Civil, supra, provee el mecanismo para evitar que una parte sea hostigada durante ese procedimiento. Por ello, el tribunal a quo viene obligado a evaluar la razonabilidad del procedimiento. Cuanto menos, sabemos que es innecesario e injustificado continuar con el descubrimiento de prueba sobre la condición económica del Sr. Pérez Figueroa en lo relativo al caso de pensión alimentaria ante su aceptación de capacidad económica para proveerla. Chévere v. Levis, supra.
Desde luego, lo dispuesto jurisprudencialmente en el citado caso, no es de aplicación a lo relacionado con la coadministración de la sociedad de bienes gananciales. Por lo tanto, en cuanto a este particular, la recurrida podrá realizar el descubrimiento de prueba que considere necesario. Ahora bien, el tribunal a quo tiene el deber de pasar juicio sobre la necesidad de ello, máxime cuando ya se realizó descubrimiento de prueba con casi todas las personas mencionadas. De hecho, la recurrida se propone volver a deponer a una testigo que había sido depuesta extensamente. Cuando se esté ante esas circunstancias, el tribunal a quo podrá limitar el alcance y los mecanismos del descubrimiento de prueba a utilizarse tratando de salvaguardar que no se utilice este procedimiento para canalizar las discrepancias que existe entre las partes, la cual ha llegado a tal grado de animosidad que incluso se pone de manifiesto en los escritos ante nos.
En consideración a todo lo relacionado, modificamos lo dispuesto por el tribunal a quo en cuanto al descubrimiento de prueba pendiente. En primer término, éste debe limitarse a atender aspectos no relacionados con la pensión alimentaria, debido a la aceptación de capacidad económica del peticionario para satisfacerla. En segundo lugar, en vista de que este caso se consolidó con el de coadministración de los bienes, se podrá hacer aquel descubrimiento de prueba que sea necesario para atender lo relativo a la coadministración de los bienes de la sociedad de gananciales. Sin embargo, se excluye de dicho descubrimiento la toma de deposición a la Sra. Luzie Muñiz, quien ya fue depuesta según surge del récord (salvo que la recurrida demuestre que, con posterioridad a la deposición de la Sra. Muñiz, advino en conocimiento de algún hecho de relevancia para probar su caso). Ello, a los fines de evitar prolongar innecesariamente este litigio.
El Tribunal de Primera Instancia deberá, además, pautar específicamente los procedimientos en el caso, incluyendo cualquier otro descubrimiento de prueba que se requiera, al único propósito antes enunciado —el de coadministración de los bienes — . Así como también, deberá tomar las medidas necesarias para garantizarle a los deponentes que el pretendido descubrimiento de prueba no será utilizado con el propósito de hostigar a la otra parte o sus testigos.
Por los fundamentos expuestos, se expide el auto de certiorari solicitado por el demandado-peticionario, se modifica lo dispuesto en cuanto al descubrimiento de prueba a tenor con el análisis vertido en esta resolución y *1151 se le ordena al Tribunal de Primera Instancia que continúe con los procedimientos en el caso de forma compatible con lo aquí dispuesto.
Notifíquese en el día de hoy, mediante vía facsímil y por correo ordinario a las partes y al Tribunal de Primera Instancia, Hon. Carlos de J. Rivera Marrero.
Así lo acordó y manda el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General
ESCOLIOS 2004 DTA 66
1. Dichas órdenes fueron emitidas el 3 de septiembre de 2003. Véanse páginas 118 y 192 del apéndice del recurso.
2. Según el récord ante nos, alegadamente, a la Sra. Mufiiz se le había depuesto por más de 4 horas el 18 de junio de 2003.
3. El 8 de diciembre de 2003, el Tribunal de Primera Instancia notificó a este Tribunal una orden emitida el 3 de diciembre de 2003 —dictada como respuesta a ciertas mociones de las partes ante el Tribunal de Primera Instancia— en la que manifestó que estaba impedido de atender sus escritos debido a la orden de paralización de este Tribunal.
4. Caso Número DAC-2002-3423 presentado ante el Tribunal de Primera Instancia, sobre coadministración de la sociedad de bienes gananciales, el cual fue consolidado con el DDI-2002-2894 de divorcio.
5. Página 34 del Apéndice.
6. Página 42 del Apéndice.
7. Página 35 del Apéndice.
8. Página 47 del Apéndice.
9. Esto constituye un cambio sustancial de la disposición reglamentaria del Reglamento del Tribunal de Circuito de Apelaciones de 1 de mayo de 1996. 4 L.P.R.A. Ap. XXII-A, R. 34(E).
10. La mayor importancia de contar con una resolución escrita del Tribunal de Primera Instancia o, en su defecto, la minuta que contenga su disposición del asunto en cuestión, es tener la certeza que el error que le imputa la parte peticionaria al foro recurrido realmente aconteció.
11. La demanda se presentó el 18 de octubre de 2002.
12. Página 78 del apéndice.
13. Página 87 del apéndice.
14. En este caso, el peticionario ha solicitado en múltiples ocasiones que se atienda el asunto del divorcio sin lograr que ello haya ocurrido. Siendo así, aun cuando no tuviéramos jurisdicción para atender el primer error invocado (relativo a la suspensión de la vista de divorcio) considerando que el Sr. Pérez Figueroa presentó una declaración jurada en la que relaciona lo acontecido en cámara el 17 de septiembre de 2003 y que, además, le concedimos al tribunal a quo la oportunidad para expresarse sobre el particular, teníamos facultad para acoger este recurso como un mandamus en jurisdicción original, en vista de la política judicial establecida con miras a lograr una justicia rápida y eficiente. Heftler Const. Co. v. Tribunal Superior, 103 D.P.R. 844 (1975); Fine Art Wall Paper v. Wolff, 102 D.P.R. 451 (1974).
15. En la referida nota al calce, el Tribunal Supremo expresó lo siguiente: “En esta clase de situaciones, los tribunales de *1152 instancia deben velar porque siempre haya una minuta; aun cuando ello sólo sea para expresar que las partes se reunieron en cámara cotí el juez y los acuerdos, si alguno, a que se llegó; ello constituye la mejor práctica.”